**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JEFFREY GORDON, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARE CAPITAL PROPERTIES, INC., DOUGLAS CROCKER II, RONALD G. GEARY, JOHN S. GATES, JR., JOHN L. WORKMAN, DALE ANNE REISS, JEFFREY A. MALEHORN, and RAYMOND J. LEWIS,<br><br>Defendants. | **Case No.**<br><br>**Judge**<br><br>**<u>CLASS ACTION</u>**<br><br>**<u>JURY DEMAND</u>** |

**CLASS ACTION COMPLAINT**

Plaintiff Jeffrey Gordon ("Plaintiff"), by and through his undersigned counsel, brings this shareholder class action on behalf of himself and all other similarly situated public shareholders of Care Capital Properties, Inc. ("CCP" or the "Company") against CCP and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78n(a) and 78t(a) respectively, and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between CCP and Sabra Health Care REIT, Inc. ("Sabra"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1. On May 7, 2017, CCP and Sabra jointly announced that they had reached a definitive Agreement and Plan of Merger ("Merger Agreement") under which each outstanding share of CCP common stock will be exchanged for 1.123 common shares of Sabra (the "Merger Consideration"). The Merger Consideration has an implied value of $29.96 per share based on Sabra's closing price on May 5, 2017.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") filed with the SEC on June 12, 2017. Through the S-4, the Board recommends that CCP shareholders vote in favor of approving the Proposed Merger at the tentative shareholder special meeting, and agree to exchange their shares pursuant to the terms of the Merger Agreement based on, among other things, the factors examined by the Board to make its recommendation and the opinions rendered by the Company's financial advisors, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") and Barclays Capital Inc. ("Barclays").

3. The Merger Consideration and the process by which Defendants agreed to consummate the Proposed Merger are fundamentally unfair to CCP's public shareholders. For instance, the implied value of the Proposed Merger is only $29.96 per share, representing a 5.07% discount to the Company's 52-Week high of $31.56 per share.

4. To ensure the success of the Proposed Merger, the Board issued the S-4, which fails to provide shareholders with all material information necessary for them to assess the fairness of the Merger Consideration. In particular, the S-4 fails to disclose: (1) certain material projections for CCP, including a reconciliation of the non-GAAP (generally accepted accounting principles) projections to the most directly comparable GAAP measures and the line items used to calculate

the non-GAAP measures, and (2) a fair summary of the financial analyses performed by BofA Merrill Lynch and Barclays.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from proceeding with the shareholder vote on the Proposed Merger, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

**PARTIES**

6. Plaintiff is, and has been at all relevant times, a shareholder of CCP common stock.

7. Defendant CCP is a Delaware corporation and maintains its principal executive offices at 191 North Wacker Drive, Chicago, Illinois. CCP's common stock is traded on the NYSE under the ticker symbol "CCP."

8. Individual Defendant Douglas Crocker II has served as Chairman of the Board since August 2015.

9. Individual Defendant Ronald G. Geary has served as a director of the Company since August 2015.

10. Individual Defendant John S. Gates, Jr. has served as a director of the Company since August 2015.

11. Individual Defendant John L. Workman has served as a director of the Company since August 2015.

12. Individual Defendant Dale Anne Reiss has served as a director of the Company since August 2015.

13. Individual Defendant Jeffrey A. Malehorn has served as a director of the Company since August 2015.

14. Individual Defendant Raymond J. Lewis has served as the Chief Executive Officer and a director of the Company since August 2015.

15. The Board and CCP may collectively be referred to as "Defendants." Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

17. Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) the Company is incorporated in this District.

**CLASS ALLEGATIONS**

19. Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 individually and on behalf of all other holders of CCP common stock (except Defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with them and

their successors in interest) who are or will be threatened with injury arising from Defendants' wrongful actions as more fully described herein (the "Class").

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are thousands of members in the Class. As of May 5, 2017, there were approximately 84,049,657 shares of CCP common stock issued and outstanding. The holders of these shares of stock are believed to be geographically dispersed throughout the United States. All members of the Class may be identified from records maintained by CCP or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

22. Questions of law and fact are common to the Class and predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a), SEC Rule 14a-9, and Regulation G; (ii) whether the Individual Defendants may be liable under Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if the Proposed Merger is consummated as presently anticipated.

23. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have and will sustain legal and equitable damages as a result of Defendants' wrongful conduct as alleged herein.

24. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff

is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude maintenance as a class action.

**SUBSTANTIVE ALLEGATIONS**

***Company Background and Recent Financial Performance***

26. CCP, a Delaware corporation, is a healthcare real estate investment trust, which focuses primarily on the post-acute sector, which includes nursing facilities and other healthcare assets operated by private providers. The Company was founded on April 2, 2015 and is headquartered in Chicago, Illinois.

27. It appears that the Merger Consideration offered to CCP's public shareholders in the Proposed Merger is unfair and inadequate because, among other things, the implied value of the Merger Consideration reflects a 5.07% discount relative to the Company's 52-Week high of $31.56 per share. If consummated, the Proposed Merger will deny Class members their right to fully share equitably in the true value of the Company.

28. It is therefore imperative that CCP's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the S-4 so that they can properly assess the fairness of the Merger Consideration and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

***The Materially Incomplete and Misleading S-4***

29. On June 12, 2017, Defendants caused the materially incomplete and misleading S-4 to be filed with the SEC. The information contained in the S-4 has thus been disseminated to

CCP shareholders to solicit their vote in favor of the Proposed Merger. The Individual Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

30. First, the S-4 is incomplete and materially misleading because it omits material information concerning the financial projections for both CCP and Sabra, which were relied upon by the Board and the Company's financial advisor in recommending the Proposed Merger to CCP's shareholders. Specifically, the S-4 states that the Board reviewed the Company's financial projections during the sales process at board meetings (*see e.g.,* S-4, 49, 56-57, 59) and relied on the Company's prospects of remaining a standalone operating company (S-4, 64) in recommending and soliciting votes in favor of the Proposed Merger.

31. As to CCP, the S-4 discloses two sets of projections, which include the non-GAAP financial metrics Total CCP NOI, CCP Adjusted EBITDA, CCP Normalized FFO, and Normalized FAD, but fails to provide the line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile these non-GAAP projections to the most comparable GAAP measure for each. S-4 at 90-91; 94-95.

32. As to Sabra, the S-4 discloses two sets of projections, which include the non-GAAP financial metrics Sabra NOI, Sabra Adjusted EBITDA, Sabra Normalized FFO, and Normalized AFFO, but fails to provide the line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile these non-GAAP projections to the most comparable GAAP measure for each. S-4 at 92-94.

33. The S-4 also discloses a set of projections for the proposed combined company, referred to as the "Combined Company Projections", which include the non-GAAP financial metric Adjusted EBITDA, but fails to provide the line item projections for the metrics used to calculated Adjusted EBITDA or otherwise reconcile Adjusted EBITDA to its most comparable GAAP measure. S-4 at 95.

34. Last, the S-4 discloses that the Company's financial advisors, BofA Merrill Lynch and Barclays, both calculated unlevered free cash flows for both CCP and Sabra utilizing the "CCP April 2017 projections (excluding unidentified transactions)" and the "Sabra April 28, 2017 projections (excluding unidentified acquisitions)" S-4 at 91, 93. Although unlevered free cash flow is a non-GAAP financial metric and the S-4 discloses how it was calculated, the S-4 fails to provide the line item projections for the metrics used to calculate unlevered free cash flow or otherwise reconcile unlevered free cash flow to its most comparable GAAP measure. *Id.*

35. When a company discloses non-GAAP financial measures in a S-4, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

36. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as the Company has included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

37. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

---

1 Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

2 *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited 03/06/2017).

3 *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. (last visited 03/06/2017).

38. In order to make the projections included on page 90-95 of the S-4 materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. In fact, the Defendants repeatedly acknowledge the materially incomplete and misleading nature of said non-GAAP measures by disclosing that each non-GAAP financial measure "should not be considered independently from, or as a substitute for, financial information presented in accordance with GAAP." S-4 at 90, 91, 92, 94, 95. Despite disclosing the misleading and materially incomplete nature of non-GAAP financial measures, Defendants fail to reconcile the non-GAAP measures disclosed in the S-4.

39. At the very least, Defendants must disclose the line item projections for the financial metrics that were used to calculated each non-GAAP financial measure, including unlevered free cash flow, disclosed on pages 90-95 of the S-4. Such projections are necessary to make the non-GAAP financial projections included in the S-4 not misleading. If corporate directors and officers choose to disclose financial projections in a S-4, they must provide complete and accurate projections, not merely excerpts of certain sets or line items of projections, particularly non-GAAP projections.

40. The S-4 also fails to provide sufficient information for shareholders to assess the valuation analyses performed by BofA Merrill Lynch and Barclays in support of their respective fairness opinion.

41. The S-4 discloses that "in connection with their respective discounted cash flow analyses, . . . BofA Merrill Lynch and Barclays calculated CCP unlevered free cash flow based upon the CCP April 2017 projections (excluding unidentified transactions) provided by CCP management (and, in the case of Barclays, Barclays' extrapolations of the CCP April 2017

projections (excluding unidentified transactions) for 2021 and 2022)", S-4 at 91 and "calculated Sabra unlevered free cash flow based upon the Sabra April 28, 2017 projections (excluding unidentified transactions) provided by Sabra management." S-4 at 93. Although the S-4 discloses and defines the unlevered free cash flow metrics calculated by BofA Merrill Lynch and Barclays, the S-4 fails to disclose the line items used to calculate this non-GAAP financial metric, or a reconciliation of this metric to its most comparable GAAP complaint measure.

42. As a result, CCP shareholders are unable to reconcile this additional non-GAAP financial metric to its most comparable GAAP metric. Without the disclosure of the accompanying line items used in its calculation for both CCP and Sabra, the S-4 is materially false and/or misleading. Thus, this information must be disclosed.

43. As to BofA Merrill Lynch's *Selected Public Companies Analysis*, the S-4 fails to disclose the high, low, mean, and median of the observed multiples for both CCP and Sabra. As a result of these omissions, shareholders are unable to assess whether BofA Merrill Lynch applied an appropriate multiples range, or, whether the estimated value of current production was reasonable. The omission of such information renders the summaries of these valuation analyses and the implied share price ranges on pages 78-79 of the S-4 misleading.

44. As to Barclays' *Selected Comparable Public Company Analysis*, the S-4 fails to disclose the mean of the observed multiples for both CCP and Sabra. As a result of these omissions, shareholders are unable to assess whether Barclays applied an appropriate multiples range, or, whether the estimated value of current production was reasonable. The omission of such information renders the summaries of these valuation analyses and the implied share price ranges on pages 86-87 of the S-4 misleading.

45. As to Barclays' *Selected Precedent Portfolio Transaction Analysis*, the S-4 fails to disclose the median of the observed multiples for both CCP and Sabra. As a result of these omissions, shareholders are unable to assess whether Barclays applied an appropriate multiples range, or, whether the estimated value of current production was reasonable. The omission of such information renders the summaries of these valuation analyses and the implied share price ranges on pages 87-89 of the S-4 misleading.

46. In sum, the omission of the above-referenced information renders statements in the S-4 materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**
**Claim for Violations of Section 14(a) of the Exchange Act Against All Defendants**

47. Plaintiff repeats and realleges each allegation set forth herein.

48. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

51. The omission of information from a S-4 will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; and (ii) the valuation analyses performed by BofA Merrill Lynch Barclays.

53. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

54. The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that BofA Merrill Lynch and Barclays reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by BofA Merrill Lynch and Barclays as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a S-4 by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

56. CCP is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

58. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**Claims for Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

59. Plaintiff repeats and realleges each allegation set forth herein.

60. The Individual Defendants acted as controlling persons of CCP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the CCP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

61. Each of the Individual Defendants were provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

63. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above, which has been omitted from the S-4;

C. Rescinding, to the extent already implemented, the Proposed Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. In the event Defendants consummate the Proposed Merger, awarding damages to Plaintiff and the Class;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 29, 2017

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Attorney for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*